JOSEPH KALMANASH, Respondent, *v.* ROSSER J. SMITH et al., Appellants, et al., Defendants.

Argued May 24, 1943; decided October 21, 1943.

*Jackson A. Dykman, Guy G. Gabrielson, Sigourney B. Olney* and *Jules Haberman* for Bror Dahlberg et al., appellants. The fifth cause of action does not state facts sufficient to constitute a cause of action. (*Gerdes* v. *Reynolds,* 281 N. Y. 180; *Lifshutz* v. *Adams,* 285 N. Y. 180; *Weinberger* v. *Quinn,* 264 App. Div. 405; *Rous* v. *Carlisle,* 261 App. Div. 432; *Oshrin* v. *Celanese Corp. of America,* 37 N. Y. S. 2d 548, 265 App. Div. 923; *Jacobson* v. *Brooklyn Lumber Co.,* 184 N. Y. 152; *Walsh* v. *Van Ameringen-Haebler, Inc.,* 257 N. Y. 478; *Davis* v. *Cohn,* 260 App. Div. 624.) The allegation of " domination and control " incorporated by reference from paragraph 34 of the complaint is insufficient. (*Oshrin* v. *Celanese Corp.,* 37 N. Y. S. 2d 548, 265 App. Div. 923; *Weinberger* v. *Quinn,* 264 App. Div. 405; *O'Connor* v. *Virginia Passenger & Power Co.,* 184 N. Y. 46; *Blaustein* v. *Pan American Petroleum & Transport Co.,* 263 App. Div. 97; *Venner* v. *N. Y. C. & H. R. R. R. Co.,* 160 App. Div. 127, 217 N. Y. 615; *Green* v. *People's Gas, Light & Coke Co.,* 118 Misc. 1, 206 App. Div. 647; *Davis* v. *Cohn,* 260 App. Div. 624.) The court will not pass on matters of business judgment such as compensation to be paid to officers of a corporation in the absence of facts showing bad faith, fraud, or other breach of duty. (*Gamble* v. *Queens County Water Co.,* 123 N. Y. 91; *Rous* v. *Carlisle,* 261 App. Div. 432; *Smith* v: *Baillie,* N. Y. L. J., Aug. 15, 1942, p. 355.) The certification of the question " Was the order of Special Term, in so far as it denied the motion to strike out paragraph 27 of the amended complaint, properly made? " means that the Appellate Division has affirmed the order of the Special Term as a matter of law and not in the exercise of discretion and presents it to the Court of Appeals. (Civ. Prac. Act, § 589, subd. 1 [a]; Cohen, Powers of the Court of Appeals, 83; *Drake* v. *Herrman,* 261 N. Y. 414; *Matter of Davies,* 168 N. Y. 89; *Moot* v. *Moot,* 214 N. Y. 204; *Matter of People* [*City Eq. Fire Ins. Co.*], 238 N. Y. 147.) A stockholders' derivative action does not lie for violation of the Clayton Act either at law or in equity. (U. S. Code, tit. 15, §§ 12-27.) A stockholder's derivative action for treble damages does not lie either at law or in equity for violation of the Clayton Act, the remedy given under the Act having been held to be exclusive. (*Meyer* v. *Kansas City Southern Ry. Co.,* 84 F. 2d 411, 299 U. S. 607; *Gerli* v. *Silk Assn. of America,* 36 F. 2d 959.) The

mere acquisition by one corporation of the stock of another, even though it result in some lessening of competition, is not forbidden by the Clayton Act. (*Pennsylvania R. R. Co.* v. *Interstate Commerce Comm.*, 66 F. 2d 37, 291 U. S. 651; *International Shoe Co.* v. *Federal Trade Comm.*, 280 U. S. 291.) Standing alone paragraph 27 would be dismissed for insufficiency. (*Diamond* v. *Davis*, 263 App. Div. 68.)

*Fred L. Gross* for The Celotex Corporation, appellant. The fifth cause of action does not state facts sufficient to constitute a cause of action (*Weinberger* v. *Quinn*, 264 App. Div. 405; *Davis* v. *Cohn*, 260 App. Div. 624; *Oshrin* v. *Celanese Corp.*, 37 N. Y. S. 2d 548, 265 App. Div. 923; *O'Connor* v. *Virginia Passenger & Power Co.*, 184 N. Y. 46; *Blaustein* v. *Pan American Petroleum & Transport Co.*, 263 App. Div. 97; *Thompson* v. *Read*, 63 Misc. 235; *Petty* v. *Emery*, 96 App. Div. 35; *Booz* v. *Cleveland School Furniture Co.*, 45 App. Div. 593; *Taylor* v. *Astor Nat. Bank*, 105 Misc. 386; *Wembach Corp.* v. *Emigrant Industrial Sav. Bank*, 264 App. Div. 161.) The order of Special Term, insofar as it denied the motion to strike out paragraph 27 of the amended complaint was improper. (*Society Milion Athena* v. *National Bank of Greece*, 281 N. Y. 282; *Meyer* v. *Kansas City Southern Ry. Co.*, 84 F. 2d 411, 299 U. S. 607; *Gerli* v. *Silk Assn. of America*, 36 F. 2d 959; *Kolb* v. *Mortimer*, 135 App. Div. 542.)

*Albert R. Connelly* and *Abraham N. Geller* for Phoenix Securities Corporation et al., appellants. No facts are set forth in the alleged fifth cause of action sufficient to sustain a cause of action against appellants Phoenix, Mack or Groves. (*Melniker* v. *American Title & Guaranty Co.*, 253 App. Div. 570; *Taylor* v. *Astor Nat. Bank*, 105 Misc. 386; *Gerdes* v. *Reynolds*, 281 N. Y. 180; *Lifshutz* v. *Adams*, 285 N. Y. 180; *Weinberger* v. *Quinn*, 264 App. Div. 405; *Oshrin* v. *Celanese Corp.*, 37 N. Y. S. 2d 548, 265 App. Div. 923; *Davis* v. *Cohn*, 260 App. Div. 624; *Booz* v. *Cleveland School Furniture Co.*, 45 App. Div. 593; *Rous* v. *Carlisle*, 261 App. Div. 432.)

*Guy G. Gabrielson* and *Albert L. Wolfe* for Walter G. Baumhogger et al., appellants. The alleged first and fourth causes of action as against Baumhogger, Dugan and Norris

are actions for damages for injuries to corporate property based on alleged breaches of fiduciary duty. (*Potter* v. *Walker,* 276 N. Y. 15; *Cwerdinski* v. *Bent,* 256 App. Div. 612, 281 N. Y. 782; *Chance* v. *Guaranty Trust Co.,* 173 Misc. 754, 257 App. Div. 1006, 282 N. Y. 656; *Singer* v. *Carlisle,* 26 N. Y. S. 2d 172, affd. 261 App. Div. 897, 285 N. Y. 863; *Lever* v. *Guaranty Trust Co.,* 262 App. Div. 1044, 289 N. Y. 615; *Gobel, Inc.* v. *Hammerslough,* 263 App. Div. 1, 288 N. Y. 177; *Corash* v. *Texas Co.,* 264 App. Div. 292; *Scott* v. *Allen,* 264 App. Div. 424.) The amended complaint does not charge Baumhogger, Dugan and Norris, or any of them, with liability for the alleged acts of other defendants. (*Lifshutz* v. *Adams,* 285 N. Y. 180; *Gerdes* v. *Reynolds,* 281 N. Y. 180; *Davis* v. *Cohn,* 260 App. Div. 624; *Coane* v. *American Distilling Co.,* N. Y. L. J. Oct. 16, 1942, p. 1048.) The amended complaint does not allege any acts of Baumhogger, Dugan and Norris within the three-year period of limitation.

*Frank Weinstein* and *Samuel J. Levinson* for respondent. The fifth cause of action is legally sufficient. (*Wainright & Page, Inc.,* v. *Burr & McAuley,* 272 N. Y. 130; *Locke* v. *Pembroke,* 280 N. Y. 430; *Walsh* v. *Van Ameringen-Haebler, Inc.,* 257 N. Y. 478; *Gerdes* v. *Reynolds,* 281 N. Y. 180; *Rogers* v. *Hill,* 289 U. S. 582; *Diamond* v. *Davis,* 263 App. Div. 68; *Gallin* v. *National City Bank of New York,* 152 Misc. 679, 155 Misc. 880; *Lonsdale* v. *Speyer,* 249 App. Div. 133; *National Citizens' Bank* v. *Toplitz,* 178 N. Y. 464; *Bosworth* v. *Allen,* 168 N. Y. 157; *Sage* v. *Culver,* 147 N. Y. 241.) The fifth cause of action states sufficient facts to constitute a cause of action against the Celotex Corporation. (*Greene* v. *Wheeler,* 29 F. 2d 468; *City of Newburgh* v. *Dickey,* 164 App. Div. 791; *Davis* v. *Cohn,* 260 App. Div. 624.) The allegations of domination and control are sufficiently alleged. (*Frank* v. *Carlisle,* 282 N. Y. 507; *Lonsdale* v. *Speyer,* 249 App. Div. 133; *Kavanaugh* v. *Kavanaugh Knitting Co.,* 226 N. Y. 185.) The order of Special Term denying the motion to strike out paragraph 27 of the amended complaint was properly made. (*International Shoe Co.* v. *Federal Trade Comm.,* 280 U. S. 291; *Boyd* v. *N. Y. & H. R. R. R. Co.,* 220 F. 174; *Hand* v. *Kansas City Southern Ry. Co.,* 55 F. 2d 712; *Remington Rand, Inc.,* v. *International Business Mach. Corp.,* 167 Misc. 108; *Harding* v. *American Glucose Co.,* 182 Ill. 551; *Dyer* v. *Broadway Central Bank,* 130

Misc. 842; *Gerseta Corp.* v. *Silk Assn. of America,* 220 App. Div. 302; *Nasmie Constr. Co.* v. *Quasman,* 215 App. Div. 724; *Gnecco* v. *Village of Great Neck Plaza,* 263 App. Div. 828; *People ex rel. Advertiser Assn.* v. *Gorman,* 222 N. Y. 712; *Matter of Davies,* 168 N. Y. 89.) The causes of action alleged in the amended complaint against the appellants Baumhogger, Norris and Dugan, are not barred by the Statute of Limitations. (*Salpeter* v. *Baur,* 262 App. Div. 1035; *Von Au* v. *Magenheimer,* 126 App. Div. 257; *Keller* v. *Levy,* 40 N. Y. S. 2d 580; *Hitchman Coal & Coke Co.* v. *Mitchell,* 245 U. S. 229; *Lonsdale* v. *Speyer,* 249 App. Div. 133; *Werbelovsky* v. *Rosen,* 260 App. Div. 222; *Burgess Bros Co.* v. *Stewart,* 112 Misc. 347; *Brackett* v. *Griswold,* 112 N. Y. 454.)

LEWIS, J. In this derivative action the plaintiff sues in behalf of himself, and others similarly situated, as a stockholder of the defendant Certain-teed Products Corporation, to which reference will be made as " Certain-teed."

It is alleged that plaintiff is the owner and holder of one hundred of the common shares of Certain-teed, the outstanding stock of which comprises 625,340 shares of common and 73,069 shares of preferred stock. The defendants include individuals who are presently, or were formerly, officers or directors of Certain-teed; an individual, Rahr, to whom an " honorarium " is alleged to have been paid by Certain-teed from its corporate funds; and two corporate defendants, Phoenix Securities Corporation and The Celotex Corporation, to which reference will be made as " Phoenix " and " Celotex " respectively.

Six alleged causes of action are pleaded by the plaintiff. In the fifth cause of action, with which we are chiefly concerned upon this appeal, the corporate defendants Phoenix and Celotex, with certain individual defendants, are alleged to have caused Certain-teed to enter into improvident employment contracts with two of its officers and to make gratuitous payments to indivdual defendants from the funds of Certain-teed, which contracts and payments form the principal bases of the plaintiff's grievance.

Our problem is one of pleading, presented by rulings upon three motions made by different groups of defendants who challenge the sufficiency of portions of the amended complaint.

It will be convenient to treat the three motions in sequence and to number them accordingly.

*Motion No. 1.* The defendants Dahlberg, Groves, Mack, Jr., Rahr, Hartley, Hudgins, Smith, Kent, Whittemore, Phoenix and Celotex moved at Special Term under rule 106 of the Rules of Civil Practice for judgment dismissing the fifth cause of action (which, by reference, incorporates a number of paragraphs from the first cause of action) upon the ground that it does not state facts sufficient to constitute a cause of action.

*Motion No. 2.* The defendants Smith, Baumhogger, Dugan, Norris, Von Egloffstein, Dahlberg, Groves, Hartley, Hudgins, Kent, Winger, Whittemore, Mack, Jr., Leroy, Colpitts, Phoenix and Celotex moved under rule 103 of the Rules of Civil Practice for an order striking out paragraph 27 of the first cause of action upon the ground that the matter therein contained is irrelevant, unnecessary and impertinent and may tend to prejudice, embarrass and delay a fair trial herein.

*Motion No. 3.* The defendants Baumhogger, Dugan and Norris, who were designated as defendants in only the first and fourth causes of action, moved under rule 107 of the Rules of Civil Practice for judgment dismissing the amended complaint as to them, upon the ground that the causes of action therein set forth are barred by the three-year Statute of Limitations. (Civ. Prac. Act, § 49.)

Each of the three motions was denied at Special Term by orders which were affirmed at the Appellate Division, two justices dissenting in part. The appeals are here by permission of the Appellate Division upon two separate sets of certified questions.

By Motion No. 1 the movants-appellants challenge the sufficiency of the fifth cause of action which incorporates by reference certain allegations contained in the first cause of action designated in the complaint as paragraphs 1 to 13 inclusive. The incorporated paragraphs allege in substance that Certain-teed, a Maryland corporation qualified to do business in New York, is engaged in manufacturing and selling a wide variety of materials used in building construction; that the individual defendants — who are, or formerly were, officers or directors, or both, of Certain-teed — are fiduciaries in their relations to Certain-teed and as such owed to the corporation and to its

stockholders the duty faithfully and honestly to conduct the business of the corporation and to conserve its assets; that prior to 1937 Celotex, a Delaware corporation qualified to do business in New York, was engaged in the manufacture of building materials in competition with the products of Certain-teed; that on April 15, 1936, and until the commencement of this action the defendants Phoenix, Groves, Mack and Dahlberg either directly or through their nominees, owned substantial amounts of the stock of Celotex, and had " working voting control " of that corporation and dominated the election of its board of directors, its officers and its business policy; that the defendants Groves and Mack also owned substantial amounts of the outstanding stock of Phoenix and dominated its board of directors, its officers and its management and business policy; that on May 27, 1938, Celotex acquired from Phoenix or its nominees 9,946 of the preferred shares and 109,360 of the common shares of Certain-teed; that on March 1, 1939, Celotex acquired 40,000 additional common shares of Certain-teed; that prior to and on April 15, 1936, Celotex manufactured essentially one product, viz., insulation board; that its board of directors and Phoenix determined that the business of Celotex could be continued in competition with its competitors upon a profitable basis only in the event the business of Celotex was not confined to the sale of one product; that it should add to its business the sale and distribution of other building materials similar·to those manufactured and dealt in by Certain-teed; that the defendants Celotex, Phoenix, Groves, Mack and Dahlberg determined that Celotex could not expand its line of products without the construction of additional plant facilities which would involve an expenditure in excess of $9,000,000 which Celotex was not then in a position to invest; that at that time Celotex was also hindered from manufacturing and selling gypsum products by not being able to procure the raw material, viz., gypsum deposits, because all the known gypsum deposits in the United States were then owned and controlled by Certain-teed and two other companies which were competitors of Celotex; that the prior efforts by Celotex to procure sufficient raw material necessary for the manufacture of the gypsum products required to expand its business in the gypsum field had proved unsuccessful.

The foregoing allegations are in substance those set forth in paragraphs 1 to 13 of the first cause of action which the plaintiff incorporates by reference in the fifth cause of action. The plaintiff does not, however, incorporate by reference into the fifth cause of action those succeeding paragraphs of the first cause of action, viz., paragraphs 14 *et seq.,* which allege in substance that Celotex, a minority stockholder of Certain-teed, conspired with other defendants to cause Certain-teed to enter into certain contracts with Celotex by which Certain-teed made excess manufacturing facilities available to Celotex upon payment of agreed proportions of operating expenses; that the arrangement, which operated to the advantage of Celotex and against Certain-teed, was fraudulent because Certain-teed had no excess manufacturing facilities; that the true intent and purpose of the arrangement was to prevent Certain-teed from competing with Celotex. It is important to note that in the fifth cause of action there is no allegation of conspiracy by any defendant designated as such therein.

In substance the fifth cause of action alleges that on May 13, 1939, the corporate defendants Celotex and Phoenix and the fourteen individual defendants — all but one of whom are or formerly were directors or officers of Certain-teed — " caused " Certain-teed to enter into contracts of employment with the defendants Dahlberg and Hartley; that the contract with Dahlberg provided that he act as general advisor to Certain-teed with the right to engage in other business and that his compensation was to be separate from compensation paid to him as chairman of the board of directors or a director of Certain-teed; that under his contract of employment and its renewal Dahlberg was to receive an annual salary of $20,000, plus a sum equal to two per cent of the amount by which consolidated net earnings of Certain-teed for each fiscal year exceeded $1,000,000 (the percentage was increased from two per cent to three per cent under a renewal agreement); that during 1939 and 1940 Dahlberg was chairman of the board of directors of Certain-teed; chairman of the board of directors of Sloane Blabon Corporation of which Certain-teed owned a majority of the stock, and president of the defendant Celotex which was a competitor of Certain-teed; that from these three corporations Dahlberg received in 1939, total compensation of $169,493.57, in 1940,

$178,187.10 and in 1941, $387,387.14; that the employment contract of May 13, 1939, and its renewal were not *bona fide* agreements but were entered into to enable Dahlberg unlawfully to procure a gift of property belonging to Certain-teed, with full knowledge, approval, connivance and consent of those defendants, other than Certain-teed named in the fifth cause of action; that the contract of May 13, 1939 and its renewal amounted to waste and spoliation of the assets of Certain-teed and should be rescinded, and that the defendants named in the fifth cause of action should be held accountable for all moneys paid to Dahlberg thereunder. As to the contract of employment entered into by Certain-teed with the defendant Hartley on May 13, 1939, and renewed in May, 1941, the plaintiff alleges that under its provisions Hartley was to discharge the duties of president of Certain-teed from June 1, 1939, to May 31, 1941, at an annual salary of $30,000 plus a sum equal to two per cent of the amount by which the consolidated net earnings of the corporation exceeded $1,000,000; that for the fiscal year ending December 31, 1941, Hartley received from Certain-teed under his employment contract $130,000. The plaintiff alleges that under the employment contracts entered into by Certain-teed with Dahlberg and Hartley there were paid to each of those defendants excessive bonuses which were not based upon the actual consolidated net earnings of Certain-teed but upon purported consolidated net earnings which were not in accord with sound accountancy practice; that such excessive bonuses were paid with the full knowledge and approval of the individual defendants. It is also alleged in substance that in 1939 Certain-teed, " at the direction of Celotex, and with the approval of the individual defendants herein," paid the defendant Whittemore, who resigned in 1939 as vice-president of Certain-teed, the sum of $55,000 as salary due him, which salary, it is alleged, " included " a gift in a substantial sum and did not represent the true and actual salary earned by the defendant Whittemore. The plaintiff alleges further that on December 31, 1936, Certain-teed, " under the direction of Phoenix, Groves, Mack and Dahlberg, and by and with the approval of the individual defendants designated in this [fifth] cause of action " paid to the defendant Rahr $7,085 as an " ' honorarium for the year 1937,' " and to an attorney and employee of Certain-teed for 1937 an " ' honorarium ' " of

$12,500, which payments were in fact " gifts of corporate funds and amounted to waste and spoliation, for which the defendants herein are accountable to said Certain-teed." There are allegations that the compensation agreed by Certain-teed to be paid to the defendants Dahlberg, Hartley and Whittemore for services was not *bona fide* and was grossly excessive; that it had no relation to the actual value of the services rendered and amounted to spoliation or waste of the property of Certain-teed; that said defendants, under the guise of receiving compensation, were in reality depleting the assets of Certain-teed for their own personal gain. Alleging further that the employment contracts of May 13, 1939, with Dahlberg and Hartley and the payments made by Certain-teed thereunder, and to Whittemore, are excessive, illegal and void, the plaintiff alleges that the exact amounts of such excessive payments to Dahlberg, Hartley and Whittemore are unknown at present and can only be ascertained by an accounting. The relief demanded by the plaintiff is that " by reason of the premises " the individual and corporate defendants named in the fifth cause of action be required to account to Certain-teed for damages occasioned thereby.

Construing the amended complaint liberally, as we are required to do, our problem is to find within the fifth cause of action as thus pleaded, allegations of fact which either expressly or by fair and reasonable intendment state a cause of action against any of the defendants designated therein.

Direction for such inquiry is given by the statutory requirement that — " Every pleading shall contain a plain and concise statement of the material facts  *  *  *  on which the party pleading relies  *  *  *." (Civ. Prac. Act, § 241.) That requirement is not satisfied, however, by conclusory statements. General allegations of misconduct will not do in the absence of statements of those facts upon which are based the pleader's conclusions that the acts of which complaint is made are wrongful, lacking in good faith, or unlawful, as the case may be. " A pleading which, fairly construed, fails to allege any *facts* which constitute a wrong but only general conclusions, is entirely insufficient and may be dismissed on that ground." (*Gerdes* v. *Reynolds,* 281 N. Y. 180, 183, 184.) These rules grew out of an apparent purpose, in the interest of fairness and dispatch, to establish a system of pleading within our jurisdiction which

would require of a party that he state his case in such a manner that vagueness is avoided; that an opponent may be informed of the facts to which he must plead and which he must be prepared to meet upon a trial, without the risk of surprise by some unforeseen construction of an obscure pleading. These and related rules will guide us as we determine whether in the fifth cause of action plaintiff alleges actionable wrong against the various classes of defendants.

We do not find allegations which by direct statement or by fair implication assert a fiduciary relation to Certain-teed or to its stockholders by which the corporate defendant Celotex — a minority stockholder — is made legally responsible for acts of the officers and directors of Certain-teed. Nor is actionable wrong pleaded against the defendant Phoenix, which corporation is not alleged to have been a stockholder of Certain-teed when any corporate action was taken of which the plaintiff complains in the fifth cause of action.

Nor is a cause of action stated against the corporate defendants Celotex, Phoenix or any of the individual defendants by allegations that they " *caused* " Certain-teed to enter into employment contracts with Dahlberg and Hartley; that the payment by Certain-teed to Whittemore for salary due him was made " *at the direction of* " Celotex, and " *with the approval of* " the individual defendants; or that the Dahlberg employment agreements " *were not bona fide contracts* " but were " *subterfuge to enable the defendant Dahlberg to unlawfully procure a gratuitous gift of corporate property with the full knowledge, approval, connivance and consent* " of the defendants and " *amounted to waste and spoliation of the assets of Certain-teed* ". Such allegations are conclusory and are legally ineffective, unsupported, as they are in the pleading before us, by facts from which the plaintiff drew those conclusions. (*Gerdes* v. *Reynolds, supra,* pp. 183-185; *Lifshutz* v. *Adams,* 285 N. Y. 180, 185; *Weinberger* v. *Quinn,* 264 App. Div. 405, 408-410; affd. 290 N. Y. 635, and see *Taylor* v. *Astor Nat. Bank,* 105 Misc. 386. 389, 391 [LEHMAN, J.].)

Referring to the further allegations that the payments made by Certain-teed to Dahlberg and Hartley under employment contracts amounted to " *excessive bonuses* "; that such payments and the payment to Whittemore " *were not bona fide* "

but " *were grossly excessive* " and " *entirely out of proportion to the net earnings of* [*Certain-teed*] *and had no relation to the actual value of the services rendered* "; that such payments in effect " *amounted to spoliation or waste of the property of* " Certain-teed; that such defendants " *under the guise of receiving compensation, were in reality depleting the assets of the defendant corporation for their own personal gain* " — we note that those allegations are followed by the plaintiff's affirmative statement that " * * * the exact amount of such excessive payment [is] unknown at present to the plaintiff herein and * * * can only be ascertained by an accounting." We think such allegations are nothing more than conclusions which lack statements of factual bases — the conclusory character of which allegations is emphasized, and in effect admitted, by the affirmative allegations of plaintiff's ignorance of " the exact amount of such excessive payments ".

The charter of a corporation and the conduct of its affairs are subject to statutory regulation. To that end the Legislature has directed that " The business of a corporation shall be managed by its board of directors * * *." (General Corporation Law, § 27, and see *Everett* v. *Phillips,* 288 N. Y. 227, 233, 234). In the exercise of statutory authority thus placed in a board of directors — "A contract made by a corporation within the scope of its chartered powers may not be set aside merely because some stockholders believe it to be unwise. There must be either fraud or conduct so manifestly oppressive as to be equivalent to fraud." (CARDOZO, J., writing in *Holmes* v. *Saint Joseph Lead Co.,* 84 Misc. 278, 283, affd. on opinion below, 163 App. Div. 885; see, also, *Burden* v. *Burden,* 159 N. Y. 287, 307, 308; *Leslie* v. *Lorillard,* 110 N. Y. 519, 532, 536; *Pollitz* v. *Wabash R. R. Co.,* 207 N. Y. 113, 124). The statements of conclusions which express no more than a difference of opinion between a stockholder and directors as to the value of an employee's services or the expediency of his employment — whether it will advance the corporation's interests — will not serve in a complaint as sufficient in law to put a director on the defensive. Nor may judicial process be invoked to challenge the judgment of directors except when fraud is alleged or conduct so oppressive as to be its equivalent, and *facts* are pleaded which afford a basis for such allegations. (*Weinberger* v. *Quinn, supra,* pp. 408, 409.)

In the case at bar no facts are alleged in the fifth cause of action which, assuming their truth, would establish that it was an action in self-interest taken by Dahlberg and Hartley or either of them, or by Whittemore, as members of the board of directors of Certain-teed, which made effective the employment contracts of May 13, 1939, and their renewals, or authorized the payment to Whittemore of salary due him. This is not a case — insofar as Dahlberg, Hartley and Whittemore are concerned — where, as in *Walsh* v. *Van Ameringen-Haebler, Inc.* (257 N. Y. 478, 480) and *Jacobson* v. *Brooklyn Lumber Co.* (184 N. Y. 152) it was alleged that the defendants " voted themselves excessive salaries." (Cf. *Gerdes* v. *Reynolds, supra,* p. 185; *Lifshutz* v. *Adams, supra.*) There are no allegations of fact that in any meeting of the board of directors of Certain-teed — the membership of which was at least nine in number — or in any meeting of that corporation's stockholders, the defendants Dahlberg, Hartley or Whittemore, or any one of them, by majority stock-ownership, or otherwise, exerted such a measure of control that, by their several votes or by the cumulative strength of their votes, they brought about corporate action which related to matters referred to in the fifth cause of action. In the absence of allegations of fact which show that the amounts paid to Dahlberg, Hartley and Whittemore for services — including payments to Dahlberg and Hartley of percentages of the net profits of Certain-teed as incentive compensation — were the result of bad faith practiced upon the corporation or its stockholders by the individual defendants, the allegations that such payments " amounted to spoliation or waste " of the corporation's assets and like conclusions, do not plead actionable wrong. The value to the corporation of an employee's past services for which some payment is due, as in the alleged case of Whittemore, and the question whether the corporation's interests will be advanced by employment contracts, such as those of Dahlberg and Hartley which were based in part on incentive compensation, are matters for the judgment of the directors with which the courts will not interfere in the absence of a factual showing of misconduct amounting to bad faith.

Our conclusion as to the legal insufficiency of allegations referred to above would lead to a dismissal of the fifth cause of action were it not for allegations set forth in paragraph

63 which charge as acts of wrongdoing a payment by Certain-teed of $7,085 in 1936 to the defendant Chester E. Rahr and a payment by Certain-teed " for the year 1937 " of $12,500 to an attorney and employee whose name is unknown to the plaintiff. Those allegations are supported by statements of ultimate fact designating such payments as gifts of the corporate funds of Certain-teed. They call for an answer by the defendant Rahr and by those individual defendants who were directors or officers of Certain-teed when such alleged payments were made.

Passing to those portions of the appeal which relate to Motion No. 2, we think it was legal error to deny the application made by all the appellants who are designated as defendants in the first cause of action, for an order striking from the amended complaint paragraph 27. That paragraph is a part of the first cause of action which in general alleges a conspiracy between Celotex (a minority stockholder of Certain-teed) and a number of the defendants, to cause Certain-teed to agree to make its excess manufacturing facilities available to Celotex. The allegations of paragraph 27 are in substance that the acquisition by Celotex of stock of Certain-teed violated the Federal statute known as the Clayton Act (U. S. Code, tit. 15, §§ 12–27). The effect of such stock acquisition is alleged to have been to lessen competition between the two corporations in interstate commerce and tended to create in Celotex a monopoly in the sale and distribution of certain materials to the exclusive benefit of Celotex and to the *damage* of Certain-teed. Damage to Certain-teed is thus charged as a result of the alleged violation of the Clayton Act. The Clayton Act gives to the Federal courts exclusive jurisdiction not only in actions brought to enforce the statute but also in those cases which involve damage alleged to have occurred by reason of acts forbidden by that law. (§§ 15, 21, 26 *id.*) It has also been held consistently that a stockholder's derivative action does not lie for violation of the Clayton Act. (*Meyer* v. *Kansas City Southern Ry. Co.*, 84 F. 2d 411, cert. denied, 299 U. S. 607; *Decorative Stone Co.* v. *Building Trades Council of Westchester County*, 23 F. 2d 426; and see *Venner* v. *N. Y. C. & H. R. R. R. Co.*, 177 App. Div. 296, 326–329, affd. 226 N. Y. 583.) It is our conclusion that the allegations of paragraph 27 were irrelevant

to the first cause of action of this derivative suit and, accordingly, that the motion to strike out the paragraph should have been granted.

Finally we reach a consideration of Motion No. 3 — being applications by the defendants Baumhogger, Dugan and Norris for dismissal of the amended complaint upon the ground that as to them the alleged causes of action pleaded are barred by the three-year Statute of Limitations. These three individuals were designated as defendants in only the first and fourth causes of action. We have already referred to the first cause and to the conspiracy charged therein which involved Celotex and certain defendants who are alleged to have caused Certain-teed to make available to Celotex its excess manufacturing facilities. The fourth cause of action incorporates by reference the first cause and those portions of the third cause which allege in substance that certain defendants, *not including Baumhogger, Dugan and Norris,* " negligently, improvidently, imprudently and fraudulently caused " Certain-teed to enter into a contract on August 1, 1939, by which it employed Celotex as its " non-exclusive agent," for compensation — alleged to be excessive — to sell a number of products manufactured by Certain-teed; that the arrangement thus made " was part of the fraudulent scheme and course of conduct of Celotex and Phoenix and of the individual defendants * * * to take the high position that Certain-teed enjoyed in the industry out of direct contact with the distributing agencies of Certain-teed's products and to substitute the name of Celotex therein instead." In addition to those incorporated paragraphs the fourth cause of action alleges in substance that Celotex, Phoenix and certain defendants, including Baumhogger, Norris and Dugan, fraudulently conspired to cause Certain-teed to enter into the contract dated June 10, 1938, which was modified April 25, 1941, and the contract dated August 1, 1939, by which contracts the excess manufacturing facilities and certain other services owned and maintained by Certain-teed were made available to Celotex; that the purposes of such conspiracy and the contracts involved therein were " to siphon the funds, property and assets of Certain-teed into the treasury of Celotex," and " to use the favorable business position of Certain-teed " to the profit of Celotex and the detriment of Certain-teed. Alleging further that items charged by

Certain-teed to Celotex under such contracts " were knowingly and deliberately miscalculated by Certain-teed " and that false book-entries were made and acts were committed which imposed unfair and burdensome obligations upon Certain-teed, the plaintiff demands the rescission of the contracts involved in the alleged conspiracy and an accounting by the defendants to Certain-teed for all *damages* caused to it and for " the profits made by [the defendants] directly or indirectly as a result of the matters aforesaid." In the absence of any allegations which by fair intendment plead that Baumhogger, Dugan or Norris profited by the matters set forth in the first and fourth causes of action, we disregard the plaintiff's demand for an accounting for alleged profits. In that connection the plaintiff alleges that the defendants designated in the first cause of action were enabled, by means of the conspiracy therein alleged, to profit as " stockholders of Phoenix and Celotex." It appears, however, by the uncontroverted affidavits filed in support of the motion that Baumhogger and Dugan never owned stock in either Celotex or Phoenix and that Norris never owned stock in Celotex and has owned no stock in Phoenix since December 31, 1935. We think that in essence the first and fourth causes of action are for damages for injuries to the property of Certain-teed, which the plaintiff seeks to enforce on behalf of the corporation, based on alleged breaches of fiduciary duty by the designated defendants. It follows that the three-year Statute of Limitations is applicable. (Civ. Prac. Act, § 49, subds. 6 and 7, as amd. by L. 1936, ch. 558 [effective Sept. 1, 1936]; *Potter* v. *Walker,* 276 N. Y. 15, 25–27; *Cwerdinski* v. *Bent,* 256 App. Div. 612, 614–616, affd. 281 N. Y. 782.) The present action was instituted by the service of process upon Baumhogger on February 24, 1942; upon Dugan, March 19, 1942, and upon Norris, March 25, 1942. Accordingly liability for wrongful acts, if any, may not be predicated upon misconduct which occurred prior to the three-year period preceding those dates which fix the commencement of this action. As affecting the three defendants concerned in Motion No. 3, the amended complaint alleges that their terms as directors and officers of Certain-teed were — Baumhogger, 1936–1937; Dugan, 1937–1938; Norris, 1936–1937. It follows that, although Dugan was a director when the contract of June 10, 1938, was made between Certain-teed and Celotex, the three

defendants last mentioned owed no fiduciary duty to Certain-teed and its stockholders within three years prior to the present suit. There are no allegations of fact in either the first or fourth cause of action that Baumhogger, Dugan or Norris committed, or aided in committing, any act as non-fiduciaries. As to the conduct by Dugan as a director and officer of Certain-teed in 1938 or at any other time, and, indeed, as to acts at any time by any one of the three defendants concerned in Motion No. 3, the allegations in the first and fourth causes of action are conclusory in character, unsupported by essential statements of fact as bases for the conclusions drawn by the plaintiff. Accordingly, upon legal principles and authorities to which reference has been made we conclude that the application, to which we have referred as Motion No. 3, should have been granted.

The order of the Appellate Division should be modified in conformity with this opinion, as follows: insofar as it affirms the order of Special Term denying the application of certain defendants, to which application we have referred as Motion No. 1, the fifth cause of action should be dismissed against all the defendants therein named except the defendant Rahr and those individual defendants who were directors or officers of Certain-teed when the payments by that corporation were made, as alleged in paragraph 63 of the amended complaint; the applications to which we have referred as Motion No. 2 and Motion No. 3 should be granted; and as so modified the order should be affirmed, without costs. The certified question — '' Does the fifth cause of action alleged in the amended complaint state facts sufficient to constitute a cause of action,'' is answered in the affirmative. The remaining certified questions are answered in the negative.

LEHMAN, Ch. J., LOUGHRAN, RIPPEY, CONWAY and THACHER, JJ., concur; DESMOND, J., concurs in the result only, on the ground that the whole of the fifth cause of action is well pleaded as against the individual defendants who received the payments complained of and as against those individual defendants who as directors or officers voted for or approved those payments, or any of them.

Ordered accordingly.