Owen McGtvern, J.
In an action for breach of a written contract for sponsorship of television programs, plaintiff has addressed a motion to certain of the defenses and counterclaims set forth in the defendants’ second amended answer. A somewhat similar motion addressed to the amended answer was granted by Mr. Justice Epstein. Since the decision of my learned colleague is the law of the case, the issue is largely whether the amendments made in the second amended answer cure the defects found by him in the earlier pleading.
1. In the second complete defense it is alleged that the writings sued on constitute only a portion of a contract which was still in process of negotiation when such writings were signed. Mr. Justice Epstein held the corresponding defense in the prior answer insufficient, among other grounds, because ‘1 the agreements themselves indicate that they are complete *1058 on their face.” This is equally true of the instant defense. The added matter therein contained indicates that the subsequent negotiations dealt with a possible but unconsummated modification of the agreements upon which this action is based.
2. The fourth complete defense pleads the Statute of Frauds. Mr. Justice Epstein" held the defense in the amended answer insufficient because it was not alleged that any portion of the agreements was oral. In the second amended answer defendants seek to remedy this deficiency by alleging that certain terms of the agreements are not contained in any writing signed by them. This is based on the fact that under the signed agreements reference is made to plaintiff’s “then current rate card” for part of the charges defendants agreed to pay. No cases are cited by defendants indicating that, to satisfy the Statute of Frauds, every document referred to in the signed agreement must also be signed by the party to be charged. Such signature is manifestly unnecessary where, as here, the document referred to is clearly identifiable. For example, an agreement signed by a defendant, to assume all of another party’s liability under a specified contract is not unenforcible under the Statute of Frauds merely because that contract is not signed by defendant. The requirement which defendants seek would make documents unnecessarily lengthy.
In the prior pleading, defendants did not state what branch of the Statute of Frauds they claimed required the agreements to be in writing. In the instant pleading they allege that the agreements sued on were for the sale of goods of the value of over $500. It must be held that the agreements on which this action is brought were for the sale of services and not of goods and that, since the agreements would be performed within a year, there was no requirement that they be signed.
For each of these reasons the fourth complete defense is held insufficient.
3. The fifth complete defense pleads absence of mutuality, since plaintiff reserved the right to change its charges unilaterally. Mr. Justice Epstein" held the corresponding defense insufficient since that conclusion was not supported by the pleadings or any writings attached thereto. Defendants now allege that the rate card referred to in the written agreements gave the right to plaintiff to change prices.
Plaintiff cites Bethlehem Steel Co. v. Turner Constr. Co. (2 N Y 2d 456 [1957]) for the proposition that an agreement permitting a seller to raise prices will be construed as permitting increases only to the prices seller regularly charges all its customers and that so construed it is not void. The holding *1059 of the Court of Appeals was based on finding by a Referee that Bethlehem charged uniform prices to all purchasers of its plain steel products (2 N Y 2d 460). In the instant case the rate card is not now before the court, nor has it any evidence as to the plaintiff’s practices. Whether the rate card will be construed as the Court of Appeals construed the Bethlehem agreement must await trial. As a matter of pleading, the fifth complete defense in the second amended answer is held sufficient.
4. The next branch of plaintiff’s motion is to dismiss for insufficiency the first partial defense in the second amended answer. One of the agreements sued on authorized defendants to terminate their sponsorship, effective after April 22, 1961 by written notice to plaintiff on or before January 4, 1961. In the first partial defense, it is alleged that plaintiff is estopped from holding the defendants for the period beyond April 22, 1961, because of defendants’ failure to give written notice before January 4, 1961. Such estoppel is grounded on specific agreements between the parties during the specified weeks that such sponsorship would end after April 22, 1961 and on the claim that discussions between the parties as to technical aspects of the programs dealt only with the period through such date. The corresponding defense in the first amended answer was not the subject of a motion to dismiss, but was the subject of a motion to make more definite and certain, which relief was granted by Mr. Justice Epsteiw. The first partial defense as now pleaded appears sufficiently definite. Whether the acts alleged are sufficient to constitute an estoppel is a question to be determined at the trial. Meanwhile, the defense should be permitted to stand and the motion to strike it for insufficiency is denied.
5. The second partial defense is one of waiver of the requirement of written notice before January 4, 1961. It is based on the same allegations as the first partial defense of estoppel and the motion to dismiss it for insufficiency is denied for the reasons that have been stated with regard to the first partial defense.
6. In the third partial defense set forth in the second amended answer defendants allege that their liability terminated effective April 22, 1961, because they delivered a written notice of termination of sponsorship, which, in view of the termination provision of the written agreements sued on, was effective on that date. Defendants fail to plead when the notice was given, but it is clear that the notice referred to was given January 10, 1961. This is apparent from the fact that the giving of a written notice along the lines pleaded in the third partial defense is *1060 alleged, "both in paragraphs 5 of the second amended answer and in the third partial defense of the prior amended answer, to have been given on January 10, 1961. As stated above the agreement required service of notice by January 4, 1961. Defendants cannot cure defects in the prior pleading by omitting the date of the service of notice and alleging in conclusory fashion that such notice was effective. As it stands this defense is insufficient and is stricken. Leave is granted to serve a third amended answer, wherein it is alleged in the third partial defense that the notice was given, on a specified date on or before January 4, 1961, if defendants are able to verify such an allegation.
7. The first counterclaim pleaded in the second amended answer is based on section 340 of the General Business Law. It is alleged that plaintiff and two other major networks have a virtual monopoly in national television advertising and that such advertising is essential to the continued profitable existence of defendant Hazel Bishop, Inc. It is further alleged that plaintiff has made contracts with competitors of said defendants more fhvorable to them as regards charges, discounts, allowances and other factors than the contracts it made with said defendant, which benefits were without cost or competitive justification. This counterclaim pleads that these practices have damaged defendant to the extent of $1,000,000 because its competitive position has been adversely affected.
The corresponding counterclaim in the prior pleading was held insufficient for want of “ anything of an evidentiary nature to establish restraint of trade or price discrimination or in what way it [defendant] was damaged thereby.” "While the instant pleading is somewhat more detailed than its predecessor, it still fails to plead a cause of action under section 340 of the General Business Law. That statute prohibits contracts, • agreements, arrangements or combinations in restraint of trade. While it is alleged that plaintiff made telecasting agreements with the competitors of defendant Hazel Bishop, Inc., it is nowhere alleged that there was a combination or conspiracy between plaintiff and such competitors to restrain trade. The first counterclaim appears to allege a claim under the Robinson-Patman Act (U. S. Code, tit. 15, § 13) but Federal courts have exclusive jurisdiction of actions under that statute (U. S. Code, tit. 15, § 15). (Freeman v. Bee Mach. Co., 319 U. S. 448, 451, n. 6 [1943]; Kalmanash v. Smith, 291 N. Y. 142, 157 [1943].) As a claim under section 340 of the General Business Law it is insufficient and is dismissed.
*1061 8. The second counterclaim set forth in the second amended answer is based on the arrangements plaintiff has with affiliated stations and on plaintiff’s alleged requirement that advertisers buy a program for transmission over a large number of stations for a long period. In dismissing for insufficiency the corresponding counterclaim in the prior answer, Mr. Justice Epstein said that “ Conclusory language is interspersed throughout without ultimate facts to support such inclusions.” The changes made in the instant pleading are slight and do not cure the defect pointed out by Mr. Justice Epstein. The motion to dismiss the second counterclaim for insufficiency is granted.
9. The third counterclaim seeks a rescission of the agreements between the parties upon the ground that they were induced by duress. The acts of duress alleged are the illegally improper acts pleaded in the first two counterclaims and the threats (1) that if defendant Hazel Bishop, Inc., would not agree to plaintiff’s terms, plaintiff would not sell it any programs, which would result in its inability to advertise its products over television in many parts of the country and (2) that plaintiff would bring ‘ ‘ an unjustified lawsuit. ’ ’ The comparable counterclaim in the amended answer was dismissed for failure ‘1 to specify facts showing the basis of fear and apprehension which forced an unwilling party to enter into an agreement.” While this defect has now been satisfied, the counterclaim is still insufficient. The allegation that the threatened lawsuit was ‘ ‘ unjustified ’ ’ is purely conclusory and it is not shown how that threat constituted duress or what harm defendant Hazel Bishop, Inc., feared therefrom. The other acts alleged are not shown to be unlawful and do not constitute the basis of a cause of action for rescission grounded on duress. “ Generally, it is not duress to do or threaten to do what one has the legal right to do ”. (Manno v. Mutual Benefit Health & Acc. Assn., 18 Misc 2d 80, 82 [Sup. Ct., Queens County, 1959].) Essentially this counterclaim is based on plaintiff’s alleged refusal to do business except on its own terms. That is not unlawful even in the case of a national television network. Television stations have not been subjected to all the restrictions of public utilities. They are subject to Federal legislation and the control and regulations of the Federal Communications Commission. In the instant counterclaim there is no claim of any violation of such legislation and regulations. This counterclaim is dismissed for insufficiency.
10. The fourth counterclaim in the second amended answer is based on plaintiff’s alleged refusal in accordance .with its ‘1 unlawful arrangements, affiliation contracts and policy of *1062 tie-in-contracts”, and “ contrary to public policy”, to sell defendant Hazel Bishop, Inc., any television programs before April 22, 1961, unless said defendant would agree to sponsor certain programs thereafter. Except for the insertion of the four words “ arrangements, affiliation, contracts and’’ in the phrase quoted above, this counterclaim is virtually a verbatim copy of the fifth counterclaim in the prior pleading, which was held insufficient by Mr. Justice Epstein for failure to allege facts showing illegality of plaintiff’s alleged action. The change made is manifestly insufficient to cure the defect and this counterclaim must be dismissed for insufficiency.
The instant answer is the third one served by the defendants. They have now had ample opportunity to prepare a proper answer. Accordingly, except as to the third partial defense, defendants are not granted leave to replead.
The motion is granted to the extent of dismissing for insufficiency the second and fourth complete defenses, the third partial defense and the first, second, third and fourth counterclaims. It is denied as to the fifth complete defense and the first and second partial defenses. Defendants may, if so advised, serve within 10 days from service of a copy of this order with notice of entry thereof, a third amended answer pleading only denials, the complete and partial defenses sustained or not attacked on this motion and the third partial defense modified in the manner allowed in paragraph 6 above.